Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Koontz, S.J.

DUNN, MCCORMACK & MACPHERSON

v.  Record No. 100260    OPINION BY JUSTICE DONALD W. LEMONS
                                    April 21, 2011
GERALD CONNOLLY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

In this appeal, we consider whether the circuit court erred when it sustained Gerald Connolly's ("Connolly") demurrer and held that Dunn, McCormack & MacPherson ("Dunn") failed to state a prima facie cause of action for tortious interference with a contract.

I.  Facts and Proceedings Below

Dunn, a Virginia law firm, served as legal counsel to the Fairfax County Redevelopment and Housing Authority (the "Authority") for approximately thirty years.  The attorney-client relationship between Dunn and the Authority was based on an at-will contract for legal representation, which was terminated in September 2005.

On April 2, 2008, Dunn filed a complaint against Connolly, Chairman of the Fairfax County Board of Supervisors, alleging that Connolly had tortiously interfered with Dunn's contract with the Authority.  The circuit court sustained Connolly's demurrer, holding that Dunn's complaint failed to state sufficient facts supporting a cause of action for

intentional interference with a contract.  The circuit court granted Dunn 21 days to file an amended complaint.

In its amended complaint, Dunn alleged additional facts in support of its claim, including that Connolly "verbally directed or persuaded" the Authority to communicate to a partner at Dunn that its contract with the Authority was terminated; that Connolly's actions "were intended by him to destroy the relationship between [Dunn] and the Authority and were not based on [Dunn's] poor performance, malfeasance or nonfeasance;" and that Connolly's actions were "outside the scope of his authority as a public official" and were "undertaken by him in his personal capacity and were motivated solely by his personal spite, ill will and malice" because Connolly had "verbally clashed" with a partner at Dunn.

Dunn further claimed that Connolly had "no legal justification or legitimate business interest in inducing the termination of the contract," concluding that "Connolly used improper means and methods to interfere with [Dunn's] contract expectancy of continued legal representation of the Authority because his sole motive was the gratification of his ill will."  In response, Connolly filed a demurrer, arguing that Dunn's amended complaint "alleges mere conclusions" and was factually insufficient to show that Connolly employed improper methods of interference, a requisite element of the tort.

In a hearing on the demurrer, the circuit court stated:

> Let's say that [Connolly] talked to the [Authority] and after which they decided that they didn't want to continue the law firm's services in any new cases. Let's say that all that occurred. Let's say that it was what [Connolly] said that persuaded [the Authority] to do that. How does that constitute tortious interference; how is that any illegal means or improper method? Because you're implicating the First Amendment rights here as well. [Connolly] doesn't give up his First Amendment rights to free speech.

After further argument, the circuit court sustained Connolly's demurrer, holding:

> This case really is [about] First Amendment rights, not only the free speech right of [Connolly], but also with regard to his right to communicate to a political entity within the jurisdiction in which he lives.
>
> I think in order to make it illegal or an improper method under these circumstances, many more facts have to be pled to indicate that, and I don't find that in this pleading. And without those facts I believe the case cannot go forward.

The circuit court entered a final order dismissing the action with prejudice.

We awarded Dunn an appeal on the following assignments of error:

1. The circuit court erred by invoking an affirmative defense, privilege – a defense never claimed by Connolly – to sustain the demurrer to the amended complaint. The only issue before the circuit court in considering the demurrer was whether the amended complaint stated a prima facie cause of action, not whether some defense might be available to defeat the cause of action.

3

2. The Noerr-Pennington privilege to petition the government is not implicated by the amended complaint, because the words of the amended complaint do not support the conclusion that Connolly interfered with the contract while in the course of petitioning the government or petitioning a governmental entity authorized to grant a petition to terminate the contract. Thus, the circuit court erred by grounding its ruling on the Noerr-Pennington privilege.

3. It is difficult to determine from the circuit court's ruling whether it sustained the demurrer solely on the basis of First Amendment privilege, or because it also decided that the amended complaint failed to state a cause of action. If the circuit court also based its ruling on a failure to state a cause of action, this was also error. As a matter of law, the allegations of the amended complaint are proof against demurrer as they exactly parallel the elements of the tort of intentional interference with a business expectancy as those elements are set forth in the Restatement (Second) of Torts and in this [C]ourt's precedent.

## II.  Analysis

### A. Standard of Review

We apply well-established principles to guide our review of a circuit court's judgment sustaining a demurrer.

> The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. Accordingly, we accept as true all properly pled facts and all inferences fairly drawn from those facts. Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo.

Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 356-57, 699 S.E.2d 483, 486-87 (2010) (citations and internal quotation marks omitted).

4

B. Sufficiency of Dunn's Amended Complaint

In order to survive demurrer, we have held that a complaint must

> allege[] sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action.

Hubbard v. Dresser, Inc., 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006) (citation and internal quotation marks omitted).

In Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985), we expressly recognized the cause of action for tortious interference with contract rights as succinctly described in the Restatement (Second) of Torts § 766 (1977):

> Intentional Interference with Performance of Contract by Third Party
>
> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Chaves, 230 Va. at 120, 335 S.E.2d at 102. We have stated the elements necessary to support a cause of action for tortious interference with contract rights.

5

> The elements required for a prima facie showing of the tort are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.

DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 145, 670 S.E.2d 704, 706 (2009) (citing Chaves, 230 Va. at 120, 335 S.E.2d at 102).

Additionally, "when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods.' " Duggin v. Adams, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987) (citation omitted) (emphasis in original); see also Restatement (Second) of Torts § 766 comment g (1979) (Until a party terminates an at-will contract, it is "valid and subsisting, and [a third party] may not improperly interfere with it." (emphasis added)). In determining whether the interference is "improper," we have stated that interference is considered "improper" if it is illegal, independently tortious, or violates an established standard of trade or profession.

Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. . . .

Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

Duggin, 234 Va. at 227-28, 360 S.E.2d at 836-37 (citations omitted).

Here, Dunn argues that comments d and f of § 767 of the Restatement (Second) of Torts support his claim that Connolly improperly interfered with its terminable at will contract with the Authority because they "were motivated solely by [Connolly's] personal spite, ill will and malice." However, Dunn fails to appreciate the limited nature of what constitutes "improper" interference in cases involving contracts terminable at will. We will not extend the scope of the tort to include actions solely motivated by spite, ill will and malice. Therefore, Dunn's amended complaint fails to "state[] a cause of action upon which the requested relief may be granted." Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 712, 636 S.E.2d 447, 449 (2006). Accordingly, the circuit court did not err in sustaining Connolly's demurrer.

7

C.  Basis of the Circuit Court's Holding

Dunn further asserts that the circuit court erred by grounding its ruling on the Noerr-Pennington doctrine to petition the government.[*]  We disagree with Dunn.

The record clearly demonstrates that the circuit court sustained Connolly's demurrer on the grounds that Dunn failed to allege sufficient facts to state a cause of action for tortious interference with a contract.  During the circuit court's hearing on the demurrer, the court repeatedly asked Dunn how the facts in its amended complaint "constitute tortious interference," and the court ultimately held that "many more facts have to be pled to indicate [the element of impropriety]," and "without those facts . . . the case cannot go forward."  The circuit court's judgment sustaining Connolly's demurrer was based firmly on Dunn's failure to adequately state a prima facie cause of action, not the Noerr-Pennington doctrine.

III.  Conclusion

---

[*] The Noerr-Pennington doctrine, dealing with exposure to antitrust liability for actions taken to influence legislative or administrative action, under constitutional principles of free speech and the right to petition the government, springs from two United States Supreme Court decisions, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).  See generally Titan America, LLC v. Riverton Inv. Corp., 264 Va. 292, 301-05, 569 S.E.2d 57, 61-64 (2002).

For the reasons stated, we hold that the circuit court did not err in sustaining Connolly's demurrer and dismissing the action.  Accordingly, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.